UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
<u>MIAMI DIVISION</u>
Case No. 15-20479-CR-WMS

UNITED STATES OF AMERICA

        vs.

ALAN AGNEW,

                    Defendant

---

<u>SENTENCING HELD 12-21-15</u>
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE

---

<u>APPEARANCES</u>:

**FOR THE UNITED STATES:**     **OLIVA CHOE, A.U.S.A.**
                               99 N.E. 4th Street
                               Miami, FL  33132


**FOR THE DEFENDANT:**         **WILLIAM CLAY, ESQ.**
                               **11440 N. Kendall Drive**
                               Miami, FL  33176

**REPORTED BY:**               **PATRICIA SANDERS, RPR**
                               *United States Court Reporter*
                               400 North Miami Avenue, Suite 11-3
                               Miami, FL  33128
                               T: 305.523.5528
                               patricia_sanders@flsd.uscourts.gov.

1              THE COURT:  Please be seated everyone.

2              THE COURTROOM DEPUTY:  This Court calls Case No.

3    15-20479-CR-WMS, United States versus Alan Agnew.

4              Counsel, please state your appearances.

5              MS. CHOE: Good morning, Your Honor, Olivia Choe on

6    behalf of the United States.

7              THE COURT: Good morning, Ms. Choe.

8              MR. CLAY: Good morning, Your Honor, Bill Clay for Mr.

9    Agnew who is here and ready to proceed to sentencing.

10             THE COURT:  Good morning, Mr. Clay; good morning Mr.

11   Agnew.

12             And for Probation.

13             MR. ALVARADO:  Good morning; Brad Alvarado on behalf

14   of United States Probation.

15             THE COURT:  Everyone may be seated. We are here today

16   for sentencing in Mr. Agnew's matter.

17             I have received the defendant's memoranda, letters in

18   support of the defendant, as well as a report by Dr. Tumor.

19             Let me ask you first, counsel, have you gone over the

20   PSI with your client Mr. Agnew?

21             MR. CLAY: I have Your Honor, thoroughly.

22             THE COURT:  And do you have any objection to the

23   factual content of the PSI?

24             MR. CLAY: We do not, Your Honor.

25             THE COURT:  And as to the guideline calculation on

1      pages 10 and 11 any objection?

2              MR. CLAY: We have no objections to the calculations,

3      Your Honor.

4              THE COURT:  Let me ask you, Ms. Choe; the Government

5      had filed a pleading with regard to some matters that needed to

6      be corrected, and also some calculation process that did not

7      ultimately affect the calculation; is that correct.

8              MS. CHOE: That's correct, Your Honor?

9              THE COURT:  All right.

10             MS. CHOE: For this defendant the application of the

11     physical restraint enhancement for the September 7th incident

12     would not ultimately effect the guideline calculation.

13             THE COURT:  All right.

14             MS. CHOE: And I would note for the Court that the

15     carjacking is also involved in Defendant McMillian's case.  I

16     believe he is set for sentencing in January.

17             The Government raised the same argument in that case.

18     And I believe it would affect his guidelines; but it would not

19     make a difference here ultimately.

20             THE COURT:  I think that the PSI I received has those

21     corrections and calculations made; am I correct?

22             MR. ALVARADO:  That's correct, Your Honor.

23             THE COURT:  All right. Then with the edits that the

24     United States provided, and without objection from the defense,

25     the Court will adopt the PSI in its entirety, including the

1    guideline calculation; which sets a total offense level 30, a

2    criminal history category 3.

3           As to Counts 2 and 4 the advisory guideline range is

4    121 to 151 months. As to Counts 8, 10 and 12 there is a

5    mandatory 84-month consecutive sentence; the counts to be

6    grouped together.

7           There is, however, the matter of the parties' plea

8    agreement, which was entered into and took into account matters

9    that Mr. Agnew is not being sentenced for today.

10          But in light of that, and with an eye toward having a

11   full record, Mr. Clay do you have anything you wish to present

12   to the Court at this time?

13          MR. CLAY: If it please the Court, my client would like

14   to address the Court first -- have him go first -- and then I

15   would like to make my points as to the areas I believe are

16   applicable under 3553.

17          THE COURT:  All right. It is a little unusual, but Mr.

18   Agnew if you wish to go first your lawyer Mr. Clay will then

19   make a statement afterwards.

20          Ms. Choe will then be able to respond, and the final

21   word will be from Mr. Clay on your behalf.

22          I notice there are people in the audience; are they

23   here for moral support or do we have any witnesses or someone

24   who would like to speak?

25          MR. CLAY: Your Honor, they are not witnesses; they are

1    all family and moral support.

2           THE COURT:  All right. Mr. Agnew, your attorney has

3    indicated that you would like to proceed in a different

4    fashion.  Normally you would address the Court last, but I will

5    allow you to proceed at this time.

6           THE DEFENDANT: I just want to say I am very sorry for

7    the crimes I committed.  I am responsible for them and I have

8    no excuses.

9           I would like for you, Judge, to know a little bit more

10   about me. I have had a very difficult life from the time I am

11   born to the present.

12          My rough life is not an excuse for what I have done;

13   but it's at part of my life. My mother had me when she was

14   14 years old. She had to work; and she did the best she could

15   with me.

16          My grandmother was very involved in taking care of me.

17   I did not have a father in my life; that was very difficult.

18          Growing up in relatively poor conditions in the inner

19   city I did not have a positive influence over my life.

20          Because my dad who was in prison got out of prison

21   when I was 17 years of age was deported back to Haiti; his

22   presence in my life for a year or two after he got out of

23   prison and then deported to Haiti messed me up more.

24          I had a bad time in middle school and high school.

25   I got beaten up a lot; and I was not happy with my life.  For

1    as long as I can remember I have been depressed and very quiet.

2     I began to smoke weed at the age of twelve.  It was everywhere

3    so it was easy to get into doing it. I smoked weed every day

4    until the present time of my arrest.

5           I now think I used weed every day to try to make

6    myself feel better, and try to escape the depression and bad

7    feelings.

8           With regard to these crimes, I fell in with a bad

9    group of people.  That was my fault, I should have known

10   better.

11          I want you to know, Judge, that I accept that I need

12   therapy; and I need a drug program.

13          I love my two children, and I have been a good father.

14   I am very sad that my children are now going to experience what

15   I have experienced, many years without having their dad in

16   their life; and that sickens me on the inside.

17          I am angry with myself, and I am punishing myself for

18   that. And I also promise you, Judge, and my children that I

19   will not be in trouble ever again.

20          THE COURT:  Thank you, Mr. Agnew.

21          MR. CLAY: I would like to ask my client one follow-up

22   question in response to what he said.

23          THE COURT:  Yes.

24    BY MR. CLAY:

25   Q.  You have said to the Judge -- and it is reflected in the

1  psychological evaluation report that you have been depressed

2  basically forever?

3  A.   Yes.

4  Q.   Can you share with the Judge what you think is the incident

5  in your life or trama in your life that has caused that

6  depression?  What is the basis?  Can you open up on that point

7  or not?

8  A.   No.

9  Q.   You don't want to -- do you know what that problem is? Do

10  you know what that demon is inside of you?

11  A.   (No response)

12       MR. CLAY: Your Honor, I have no further questions of

13  my client.  I was hoping he could break through a bit and

14  reveal something perhaps --

15       THE COURT:  I don't think that would be likely, Mr.

16  Clay in this setting.

17       Even the doctor found, understandably, given his

18  diagnosis that Mr. Agnew -- as anyone might be -- reluctant to

19  delve too closely into those matters.

20       MR. CLAY: I realize that.   It is a combination of my

21  frustration to try to be diligent and try to get to some

22  information I think would be helpful to the Court.

23       THE COURT:  I understand.

24       MR. CLAY: I am hopeful that perhaps through some

25  psychological therapy, which hopefully he gets in the Bureau of

1    Prisons, he may be able to address some of these things.

2          THE COURT:  I wondered, Mr. Clay, in light of the plea

3    agreement, is that part of your recommendation?

4          Have you identified or are you aware of a facility

5    that is more suited to addressing the issues you have raised?

6          MR. CLAY: I have not identified a particular BOP

7    facility; but I will ask Your Honor to make a recommendation

8    for the R-DAP program; and that Mr. Agnew gets psychological

9    therapy wherever the BOP can provide it.

10          And I would ask that his psychological evaluation be

11    attached to his PSI so the BOP has as access to those findings.

12          THE COURT:  Of course.

13          MR. CLAY: If I may address the 3553 A factors at this

14    time, Your Honor.

15          THE COURT:  Yes.

16          MR. CLAY: This case is very sad and very serious. The

17    crimes of violence are very serious, and there is no disputing

18    that. But that said, we have too many young men coming into the

19    system facing these types of sentences.

20          There is a lot said about safety nets, and whether we

21    need them in society -- and I am a law and order guy actually

22    privately; even though I advocate for clients the best I can

23    and seek the most reasonable sentences I can for clients.

24          But personally I am law and order; and law and order

25    is best served when young people like Mr. Agnew are intervened

1    upon by systems with safety nets. That is not inconsistent with

2    law and order or with law enforcement interests; it is actually

3    very consistent.

4            However, it did not happen for Mr. Agnew. You know his

5    history; born a premature baby, 3 or 4 weeks in an incubator, a

6    number of near death experiences in the hospital, multiple

7    blood transfusions.

8            God knows what permanent damage is inflicted by that.

9    And his mother, who was 14 at that time, she was trying to get

10   her own life in order.

11           She now has to try to support this newborn baby. She

12   apparently is also dealing with her own serious trauma, which

13   was a sexual assault that she was the victim of.

14           So, now we have a 14 year old mother -- with probably

15   untreated PTSD -- trying to make it in the world as a single

16   mom, no help from a man because he is in prison.

17           He has never had anything to do with the family. So

18   his mother does the best she can; she becomes the wage earner

19   in the family, and has two more children she has to support

20   after Alan.

21           Grandma gets into the family role of being basically

22   grandmother and mother, which is wonderful, and she did all she

23   could do.

24           Somewhere in Mr. Agnew's life there has been at least

25   one major traumatic event he won't talk about, and maybe more.

1          In middle school he starts to be beaten up. He is

2    beaten up by other school kids; and is beaten up by police.

3          THE COURT:  I have read everything in his file. I have

4    a couple points before you go much further, Mr. Clay.

5          MR. CLAY:  Sure.

6          THE COURT:  And maybe they are questions. I do not

7    disagree with you that the system fails many young men; and I

8    think they may very well have failed Mr. Agnew.

9          I notice in his pages of arrests with a number of

10   incidents, the punishment included anger management, substance

11   abuse treatment, community service.

12         And I also noticed -- and it could be a self defense

13   mechanism -- but there are as many arrests for Mr. Agnew

14   fighting with others and having physical alterations with

15   others.

16         One where he caused a laceration to the victim's face;

17   a fight where the defendant and others punched and kicked the

18   victim many times.

19         Violence was a part of his middle school experience.

20   Clearly there was an epic fail because middle school should not

21   be about that.

22         But your narrative, Mr. Clay, is missing some

23   components.

24         MR. CLAY: I think some of the components you say may

25   be missing are in Dr. Tumor's psychological evaluation report

1   where he talks about what happens to people who suffer from

2   what Dr. Tumor calls a toxic stress syndrome.

3           That is a whole life that is full of toxic, stressful

4   traumatic events -- as this young man's life has been from the

5   moment of birth.

6           It gives rise to impulsiveness, lack of judgment,

7   anger, etcetera. Although he has gotten a little treatment

8   along the way -- I am quite familiar with those programs --

9   they are really not very in depth.

10          No one is really rendered true therapy in these so

11  called treatment programs.

12          So he, not surprisingly, consequently acts out. I

13  would point out -- and I think this is important here -- he is

14  not socio-pathic; and he thankfully does not have anti-social

15  personality disorder.

16          Because had he been diagnosed with those problems his

17  prospects would be very dim. However, these problems are

18  addressable; they are treatable and he can change. Hat is the

19  opinion of Dr. Tumor.

20          One of the other points I made with Dr. Tumor is --

21  since I am kind an old school person I asked an old school

22  question.

23          I asked, how old is my client's mental age; and there

24  is an e-mail exchange between myself and Dr. Tumor.  The doctor

25  said, well, we don't really get into mental age anymore in the

1   psychological field; and he explained why. He said if I were to

2   categorize Mr. Agnew's mental age, I agree with you Mr. Clay,

3   he is of an adolescent mental age; such as is typical of

4   individuals in the Juvenile Justice System.

5          And I think that is important for Your Honor to keep

6   in mind. Had Mr. Agnew received some of these safety net

7   programs, and had he been identified as having some of these

8   mental disorders while in school, middle school and high

9   school, and had he been identified as having a drug problem,

10  and had he been identified as having a learning disability,

11  things could have turned out a lot differently.

12         His young mom did her best. I can only imagine the

13  frustration she faced when she tried to get the attention of

14  the school system.

15         Here is this young teenage mom trying to get the

16  school to respond and give her son some help, and they did

17  nothing.

18         And I believe the in-attention she got -- and

19  therefore the total lack of attention that Mr. Agnew got --

20  brings us where we are today.  But that's life, and life is not

21  fair.

22         So, in sentencing and weighing out these factors, I

23  would ask that Your Honor take all of these things into

24  consideration.

25         THE COURT:  I understand all of that, Mr. Clay, but

 1    the reality is Mr. Agnew committed crimes that have now exposed

 2    him to 107 years in prison. Mr. Agnew went on a crime spree the

 3    likes of which I don't think many of the Judges in this court

 4    have ever seen.

 5         And while I understand everything you are saying, the

 6    reality is we are here now; so my question really is -- I need

 7    to know what facility I should send Mr. Agnew to in order to

 8    address these problems.

 9         I am not in the position to right the wrongs of an

10    inattentive school system. I am not in the position to take

11    over the role of a young mother who watched Mr. Agnew

12    struggling.

13         I really don't know what options were available to

14    them and what they could have done; but where we are now is

15    that Mr. Agnew and his codefendants essentially terrorized

16    people for about a month.

17         So now I have to sentence him; and therefore I need to

18    know where I can designate Mr. Agnew so that he is able to get

19    the help he needs.

20         I really don't know what else there is for me to do at

21    this point, Mr. Clay.

22         MR. CLAY: Your Honor, I would make one suggestion in

23    light of 3553 -- and, Your Honor, of course has to make her own

24    decision. Obviously we all understand that Your Honor does not

25    have to follow the joint recommendation of the parties in

1    fashioning a reasonable and correct sentence in this case.

2    And it may be unfair in that it is throwing it back on Your

3    Honor -- but sometimes that happens -- but the Judge is the one

4    that ultimately makes the final decision.

5         So I would just posit that in light of all of the

6    circumstances, that it is Your Honor who makes the ultimate

7    decision regardless of any agreement by the parties.

8         And obviously Your Honor would take into account all

9    of the 3553 factors. That is all that I can really say, Your

10   Honor; because I cannot allow my frustration to cause me to

11   exceed the restraints that are on me in this particular case.

12        Thank you, Judge.

13        THE COURT:  Thank you, Mr. Clay.

14        Ms. Choe.

15        MS. CHOE: Your Honor, just to make sure the record is

16   clear -- and I believe Your Honor is aware of all of this --

17   but the parties have agreed that the guideline calculation is

18   correct, and that essentially with the minimum mandatory on

19   Count 9 it amounts to a range of 17 to 19 and a half years.

20        Of course as everyone here recognizes, the parties did

21   agree at the time of defendant's plea to jointly recommend a

22   sentence of 25 years.

23        I note that because we have heard, I believe, what

24   essentially amounts to an argument that the Court vary down

25   under 3553 A.

1          And I would read specifically from paragraph eight of

2    the parties' plea agreement.

3          In light of this office's agreement to dismiss Counts

4    1, 3, 5, 11 and 13, each of which upon conviction would require

5    the Court to impose a minimum mandatory sentence of 25 years to

6    to be run consecutive to any other term of imprisonment --

7          THE COURT:  So each count is 25?

8          MS. CHOE: Correct, Your Honor.

9          THE COURT:  All right.

10         MS. CHOE: The parties agree to jointly recommend that

11   the Court pursuant to Title 18 United States Code Section 3553

12   A should impose a sentence of 25 years imprisonment.

13         The paragraph goes on to acknowledge that the

14   defendant understands that this 25 year recommendation may be

15   above the advisory sentencing guideline range; which in fact it

16   is.

17         And the parties will neither recommend a sentence that

18   is higher or lower than that amount.

19         The only other thing I would say is although the

20   Government recognizes a 25 year sentence is a serious and

21   significant sentence -- particularly for someone of the

22   defendant's age -- both the Government and the defendant have

23   agreed to this recommendation.

24         And I will provide the Court with the reasons --

25         THE COURT: Before you do -- and I appreciate that --

1    did you have Dr. Tumor's report before entering into this

2    agreement?

3             MS. CHOE: I did, Your Honor.

4             THE COURT:  Thank you.

5             MS. CHOE: Your Honor, Mr. Clay provided it to me, I

6    think, before even the motion to suppress. And the reason the

7    Government was willing to recommend a 25 year sentence was

8    because we recognized that the defendant is young; and I did

9    recognize much of what Mr. Clay was saying in that he has not

10   had an easy life.

11            On the other hand, the Government felt a serious

12   sentence was still merited because of these crimes that were

13   committed.

14            There are many people in this community that have

15   faced a very difficult upbringing and also very difficult

16   circumstances and have not committed these types of crimes.

17            Your Honor, this defendant was involved in committing

18   a spree of robberies that involved terrifying people by holding

19   guns to their heads and demanding they give up their property

20   and their sense of security.

21            The Government also felt that a serious sentence was

22   justified because of the defendant's past where he also

23   committed violent crimes, as well as other crimes.

24            And while I recognize many of them were juvenile

25   arrests and did not result in convictions, they were very

1   serious.  And in these sorts of cases, involving multiple armed

2   robberies, where someone is involved in those number of

3   incidents in the case or is the leader of the group, my office

4   rarely agrees to pleas to less than 924(c) counts.

5            That was actually the original plea discussed in this

6   case; which would have been a minimum of 32 years imprisonment.

7            And the Government took into account the 3553 A

8   factors as to Mr. Agnew and felt that a sentence of 25 years,

9   while extremely serious, was warranted in this case.

10            So there were institutional considerations involved in

11   this case in allowing for a plea agreement of this type.

12            My office looks very carefully at these cases, and

13   takes these matters very seriously as well.

14            For all these reasons the Government agreed to the

15   25-year recommendation. And I just wanted to provide that

16   record for the Court.

17            Thank you, Your Honor.

18            THE COURT: Thank you, Ms. Choe.

19            Anything in rebuttal; or anything else you would like

20   to bring to the Court's attention?

21            MR. CLAY: No, Your Honor.

22            THE COURT:  The Court has considered the statements

23   and recommendations of the parties, the presentence report

24   which contains the advisory guidelines and the statutory

25   factors set forth in 18 United States Code 3553 A.

1      I have considered Mr. Clay's argument, as well as the

2  report given by Dr. Tumor; and I am cognizant of the challenges

3  and difficulties Mr. Agnew has faced in his lifetime.

4      But I agree with the resolution the parties have come

5  to in this case, and I agree with their assessment that a

6  sentence above the advisory guideline range is warranted given

7  the serious nature and circumstances of the offenses.

8      The need to promote respect for the law, to provide

9  just punishment for the offense and to afford adequate

10  deterrence to criminal conduct; and protect the public from

11  further crimes of the defendant.

12      And in imposing this sentence I find that it is

13  sufficient but not greater than necessary to achieve the goal

14  of fashioning a reasonable sentence in this case.

15      It is the finding of the Court that the defendant is

16  not able to pay a fine, therefore no fine will be imposed.

17      It is the judgment of the Court that the defendant,

18  Alan Agnew, is comitted to the Bureau of Prisons to be

19  imprisoned for a term of 300 months.

20      This term consists of 216 months as to Counts 2 and 4,

21  180 months as to Counts 8, 10 and 12, to be served currently

22  with each other, and 84 months as to Count 9 to be served

23  consecutively.

24      It is further ordered that the victim's losses are not

25  yet ascertainable, so the Court will set a date for final

1   determination of the losses not to exceed 90 days from today.

2    Upon release from imprisonment defendant shall be placed on

3   supervised release for a term of three years as to Counts 2, 4,

4   8, 9, 10 and 12.

5           Within 72 hours of release the defendant shall report

6   in person to the Probation Office in the district where he is

7   released.

8           While on supervised release the defendant shall not

9   commit any crimes, shall be prohibited from possessing a

10  firearm or other dangerous device, shall not possess a

11  controlled substance, shall cooperate in the collection of DNA

12  and shall comply with the standard conditions of supervised

13  release, including the following special conditions:

14          He shall participate in substance abuse treatment,

15  permissible search, financial disclosure, as well as the self

16  employment restriction as noted in Part G of the presentence

17  report.

18          He must immediately pay to the Government a special

19  assessment of $100 as to each of the counts for a total of

20  $600.

21          Total sentence 300 months imprisonment, three years

22  supervised release and a $600 special assessment.

23          Is there a forfeiture as to the guns?

24          MS. CHOE: I don't believe they are in Federal custody,

25  Your Honor.

1    THE COURT:  Now that sentence has been imposed, does

2  the defendant or counsel object to the Court's findings of fact

3  or the manner in which sentence was pronounced?

4    MR. CLAY:  Although there is an appellate waiver, I

5  still would register an objection to the sentence imposed.

6    THE COURT:  All right. Mr. Agnew, you have the right

7  to appeal the sentence, within the parameters of your plea

8  agreement.  Any notice must be filed within 14 days after the

9  entry of judgment.

10    If you cannot afford to pay for the appeal it will be

11  waived and Mr. Clay will continue to represent you.

12    I am going to hold off on entering the judgment and

13  commitment in this matter.  I am going to ask Probation and the

14  United States Attorney's Office to speak with Mr. Clay, do some

15  research, and present me with information as to the best

16  facility for Mr. Agnew.

17    A facility that would have a program designed for

18  persons like Mr. Agnew; who have not received appropriate

19  mental health treatment in their lifetime.

20    Yes, Mr. Clay.

21    MR. CLAY: I would like to add an educational component

22  to that as well. Substance abuse is an issue so I would request

23  that as well.

24    THE COURT:  All right. I would have to think there is

25  a place that has a program that might address these issues.

1           I would think with the youth of some of the offenders

2    and the rise of persons having mental health issues coming into

3    the system there may be a program somewhere that would benefit

4    Mr. Agnew.

5           I would like Mr. Agnew to receive whatever he can.

6     I will hold off on the J&C -- it is obviously the holidays --

7    so maybe the first week of January when we all get back.

8           If you have any suggestions, Mr. Clay, then I can make

9    that a part of the J&C.

10           I will set the restitution hearing for Monday

11    March 28th at 9:30 a.m.

12           MR. CLAY: I think we may be able to work out a

13    stipulation well in advance of that.

14           I would make one other request.

15           THE COURT:  Sure.

16           MR. CLAY: Mr. Agnew was arrested in these cases by the

17    State authorities on September 15, 2014; the Federal arrest in

18    this matter happened on June 16th, 2015 -- I see June 16th in

19    one spot, and I see June 18th, 2015 in another spot.

20           But basically the only way for Mr. Agnew to get credit

21    for that time in the State system is for Your Honor to impose

22    the sentence nunc pro tunc to September 15th, 2014; in giving

23    him credit for that time in the State system.

24           THE COURT:  I am not sure that is how it works.  Is he

25    still under a detainer in the State system?

1          MS. CHOE: I believe there is at least his violation of

2    probation case pending.

3          THE COURT:  I would ask Ms. Choe if you could speak

4    with your State counterpart to see what their position is.

5          MS. CHOE: I believe that -- at least according to the

6    PSI -- I believe the actual cases have been dropped.

7          I believe that he has a violation of probation warrant

8    arising out of this conduct.

9          THE COURT:  I would ask you, Mr. Clay, if you would

10   perhaps speak with someone from my former office -- I see Ms.

11   Carmon is here -- since they are familiar with these matters.

12         I want to make certain Mr. Agnew gets credit; I just

13   don't know if what you proposed effectuates that.

14          All right. Is there anything further on behalf of the

15   Government or Mr. Agnew?

16         MR. CLAY: No, Your Honor.

17         MS. CHOE: Your Honor, the Government moves to dismiss

18   the remaining counts as to Mr. Agnew.

19         THE COURT:  They are dismissed.  Thank you all.

20         Good luck to you, Mr. Agnew.

21

22

23

24

25

```
 1                          -   -   -

 2                  C E R T I F I C A T E

 3          I hereby certify that the foregoing is an accurate

 4     transcription of proceedings in the above-entitled matter.

 5

 6                                      /S/PATRICIA SANDERS

 7     _____              _____

 8     DATE FILED               PATRICIA SANDERS, RPR

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```